UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stewart P. Jump,  Civ. No. 13-2809 (PAM/JJG)

          Plaintiff,

v.  **MEMORANDUM AND ORDER**

Speedway LLC, SuperAmerica,
Northern Tier Energy, LP, and
Northern Tier Retail, LLC,

          Defendants.

---

This matter is before the Court on Defendants' Motions to Dismiss. For the reasons that follow, the Motions are granted in part and denied in part.

**BACKGROUND**

Defendant Speedway LLC operated gas stations under the assumed name SuperAmerica until December 2011, when Defendants Northern Tier Energy, LP and Northern Tier Retail, LP[1] purchased Speedway's SuperAmerica stores.

Plaintiff Stewart Jump worked for Speedway in two of its SuperAmerica stores from 1990 to February 2012, most recently as a manager. When SuperAmerica stores transitioned

---

[1] Northern Tier Energy, LP argues that it should be dismissed because its retail counterpart, Northern Tier Energy Retail, LLC, is the proper defendant. Jump makes allegations directed at both entities, however, and there is not enough information at this point for the Court to determine whether both are properly named. For present purposes, the Court will refer to the entities collectively as "Northern Tier."

to Northern Tier, Jump had to decide whether to retire from Speedway or terminate his employment with Speedway and become a Northern Tier employee. As a Speedway employee, Jump participated in the Speedway Health Plan ("Speedway Plan"), which is a qualified plan under ERISA. Under the Speedway Plan, Jump would have been entitled to a subsidy to cover up to 80% of his premiums on retirement from Speedway.

The Northern Tier Energy LLC Employee Benefit Plan ("Northern Tier Plan"), also a qualified ERISA plan, provides coverage for retirees between the ages of 55 and 65 who had ten or more years of service with Speedway. The parties agree that Jump's employment with Speedway counted towards the ten-year period and that he would be eligible to receive continuing health care coverage at group rates. Unlike the Speedway Plan, the Northern Tier Plan does not necessarily include a subsidy for retired employees.

In order to determine whether he should retire from Speedway before the transition of SuperAmerica stores to Northern Tier, Jump alleges that he attended benefits meetings and reviewed materials provided to him. (1st Consol. Compl. ¶ 24.) Jump claims that Northern Tier and Speedway misled him about the Northern Tier Plan's lack of subsidy. He claims that he would have simply retired from Speedway, rather than transition to Northern Tier, if he had known that he would not have been eligible for a subsidy under the Northern Tier Plan. Jump specifically alleges that Defendants intentionally misled him on two occasions.

First, in December 2010, Jump attended a company-wide meeting held to address the upcoming transition from Speedway to Northern Tier. At that meeting, Jump was provided

with a document with the headings "FAQs Relating to Employment with Speedway SuperAmerica" and "FAQs Relating to Employment with Northern Tier Energy."[2] (Tahdooahnippah Decl. (Docket No. 56-1) Ex. B.) Jump alleges that Speedway and Northern Tier "jointly prepared" the document. (1st Consol. Compl. ¶ 27.) Both portions of the document answer the following question:

> Will health coverage benefits still be available to employees who retire after age 55 and who have at least ten years of company service who will be working for Northern Tier Energy after the sale? Will retirees hired prior to 01/01/2004 still be eligible for the company subsidy up to 80% of the total cost until reaching age 65, or will something similar be offered from Northern Tier Energy for those people?

(Tahdooahnippah Decl. (Docket No. 56-1) Ex. B.)

> In relevant part, the Speedway portion of the documents responds that
>
> All SSA employees who retire after attaining age 55 and who have at least 10 years of Company Service are eligible to participate in the Retiree and Survivor Health Plan after retirement, provided that they participated in a Company-sponsored Health Plan on the day prior to their retirement. . . . For those employees hired before 1-1-2004, they will still qualify for the subsidy [up to 80%] based on service.

(Id.)

---

[2] SuperAmerica seeks dismissal because it is merely an "assumed name" under which Speedway, and now Northern Tier, conducts business. (1st Consol. Compl. ¶¶ 5, 11, 14.) Jump responds that Speedway has not established that SuperAmerica does not have the capacity to be sued. At this early stage, there is insufficient information to resolve this issue. The Court will collectively refer to Speedway and SuperAmerica as "Speedway" unless a finer distinction is required.

The Northern Tier portion of the documents says, in part, that "Northern Tier Energy will implement a similar retiree health plan that is currently in place for SSA employees. <u>We will also offer a subsidized pre-65 years of age retiree benefits to those hired before 2005 and who retire after age 55 with at least ten years service</u>." (<u>Id.</u> (emphasis added).) The document concludes by inviting employees to submit questions via e-mail to Speedway. (<u>Id.</u>) Jump does not allege that he submitted any questions following the meeting or that he asked any questions during the meeting.

Second, in September 2011, Jump attended an informational meeting during which he alleges that representatives from both Speedway and Northern Tier presented benefits information with the aid of a document entitled "SuperAmerica Stores: Employee Transition – Effective October 20, 2011." (1st Consol. Compl. ¶ 37.) In relevant part, the document says that "[Northern Tier] will recognize Speedway service for eligibility and vesting in benefit plans[.]" (Tahdooahnippah Decl. Ex. A at 4.) The document is silent as to premium subsidies and Jump does not allege that the subject was discussed at the meeting. Jump also does not allege that he inquired as to premium subsidies before or after the meeting. He does allege, however, that the presenters "made oral representations that Northern Tier Defendants would offer the same benefits to SuperAmerica employees, including with regard to vesting in benefits plans." (1st Consol. Compl. ¶ 39.) Jump alleges that he "understood the representations . . . to mean that even if he did not retire in November of 2011, he would still be eligible to receive subsidized retirement benefits." (<u>Id.</u> ¶ 40.)

Jump alleges that based on the information provided to him by Defendants, he decided to transition from Speedway to Northern Tier at the end of 2011. (Id. ¶¶ 45, 47.) He then retired from Northern Tier in February 2012, at age 59 after more than 21 years of service. (Id. ¶¶ 51, 52.) Jump's official date of retirement was March 28, 2012, because he had 290 unused vacation hours that kept him on the payroll until that date. (Id. ¶ 53.)

When Jump contacted Northern Tier about his benefits under the Northern Tier Plan, he was told that he was not eligible for a subsidy. (Id. ¶ 55.) In other words, Jump could receive benefits under the Northern Tier Plan, but would be solely responsible for paying the premiums. Jump then contacted Speedway to see if he could obtain benefits under the Speedway Plan and was told that he was ineligible to do so because he had terminated his employment. (Id. ¶ 57.)

On March 29, one day after Jump's official retirement, Northern Tier adopted "Amendment Number One" to the Plan. The Amendment, effective January 1, 2012, states, in part, that "[w]ith respect to Category A Eligible Retirees . . . the Employer will subsidize up to 80% of the Eligible Retiree's contributions for retiree medical coverage under the Plan for himself[.]" (Ort Decl. (Docket No. 57-2) Ex. B. at A-4.) In contrast, "Category B Eligible Employees . . . must pay 100% of the cost of retiree medical coverage under the Plan." (Id.) Category A retirees are defined as employees coded under "CORP, REFN, or TERM" and Category B employees include those coded as "RETA, RETC, or RETE." (Id. at A-1.) Defendants contend that Jump was a Category B employee, but Jump does not know

5

whether he was designated as a Category A or Category B employee.

Jump alleges that he lost his health insurance coverage as a result of the alleged misrepresentations made by both Speedway and Northern Tier as to whether he would be entitled to a subsidy, and that he is unable to afford other insurance. Jump filed suit in Hennepin County Conciliation Court seeking $10,000 in damages. Defendants removed the matter to this Court.

Jump has brought eleven claims as follows: Count I alleges breach of fiduciary duty under ERISA against Speedway, Count II alleges breach of fiduciary duty under ERISA against Northern Tier, Count III alleges wrongful denial of employee benefits under ERISA against Northern Tier, Count IV alleges equitable estoppel under ERISA against Speedway and SuperAmerica, Count V alleges equitable estoppel under ERISA against Northern Tier, Count VI alleges interference with protected rights under ERISA against Speedway and SuperAmerica, Count VII alleges common-law fraud against Northern Tier, Count VIII alleges common-law fraud against Speedway and SuperAmerica, Count IX alleges negligent misrepresentation against Northern Tier, Count X alleges negligent misrepresentation against Speedway and SuperAmerica, Count XI alleges tortious interference with contract against Northern Tier. Defendants now move to dismiss all claims.

**DISCUSSION**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. Westcott v. Omaha, 901 F.2d 1486,

1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**A.    State-Law Claims (Counts VII to XI)**

Defendants argue that the state law fraud, misrepresentation, and tortious interference claims should be dismissed because they are preempted by ERISA. The Court agrees. "ERISA supercedes 'any and all State laws insofar as they . . . relate to any employee benefit plan.'" Parkman v. Prudential Ins. Co. of Am., 439 F.3d 767, 771 (8th Cir. 2006) (quoting 29 U.S.C. § 1144(a)). ERISA's preemption language is "conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990). In determining whether a state action "relates to" an employee benefit plan covered by ERISA, the Eighth Circuit employs a two-part test. Parkman, 439 F.3d at 771. A law relates to a covered employee benefit plan for purposes of ERISA if it has (1) "a connection with" or (2) "reference to such a plan." California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 324 (1997).

Jump's claim relates directly to the administration of plan benefits under both the Northern Tier and Speedway Plans. He specifically alleges that Defendants misled him as to the nature of his health benefits under the Northern Tier Plan. Jump does not deny this,

but argues that his state-law claims are viable as alternative claims in the event Defendants are deemed not to be fiduciaries under ERISA. (See 1st Consol. Compl. ¶¶ 107, 120, 134, 142, 150.) As the Eighth Circuit has noted, however, "because ERISA allows equitable relief against both fiduciaries and non-fiduciaries, Congress intended pre-emption to apply even where no ERISA fiduciary remedy existed." Consol. Beef Indus., Inc. v. New York Life Ins. Co., 949 F.2d 960, 964 (8th Cir. 1991) (citing Gibson v. Prudential Ins. Co., 915 F.2d 414, 417-18 (9th Cir. 1990)). Thus, whether Defendants are fiduciaries does not affect the Court's pre-emption analysis. Id. Counts VII through XI therefore are dismissed with prejudice.

**B.     Breach of Fiduciary Duty/Equitable Estoppel (Counts I, II, IV, and V)**

Jump brings claims against Northern Tier and Speedway for breach of fiduciary duty and equitable estoppel under ERISA. Both claims fall under 29 U.S.C. § 1132(a)(3),[3] which provides:

> A civil action may be brought . . .
>
> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Jump alleges that Northern Tier breached its fiduciary duty to him by failing to provide sufficient information about the benefits provided under the Northern Tier Plan and

---

[3] In the Complaint, Jump indicates that Counts I and II are brought under 29 U.S.C. § 1132(a)(2). (1st Consol. Compl. at 12, 14.) This appears to have been a typographical error, as all parties now seem to agree that Counts I and II are actually brought under 29 U.S.C. § 1132(a)(3). The Court will analyze the claims accordingly.

by making misrepresentations about what benefits would be provided under the Plan. (Id. ¶¶ 73, 92-96.) Jump contends that Speedway and Northern Tier should be equitably estopped from denying him the benefits he understood he was entitled to, i.e., a subsidized health plan.

Jump similarly alleges that Speedway breached its fiduciary duty to him by failing to provide sufficient information about benefits after the transition to Northern Tier, misrepresenting the benefits that would be provided after the transition, failing to ensure that representations made by Northern Tier regarding the benefits were accurate, and failing to verify what benefits employees would receive if they transitioned to Northern Tier. (1st Consol. Compl. ¶¶ 66, 85-88.)

### 1. Northern Tier

Northern Tier argues that Jump's fiduciary-duty claim under § 1132(a)(3) should be dismissed because Jump does not adequately allege that Northern Tier had a fiduciary relationship with him at the time the alleged misstatements were made. Northern Tier seeks to disavow any statements made before it completed the acquisition of Speedway's SuperAmerica stores in November 2011. Northern Tier specifically contends that any statements it made during the transition, but before the acquisition date, are not actionable because it owed no fiduciary duty to Jump during that period. Jump responds that he properly alleged that Northern Tier was a fiduciary acting within a fiduciary capacity and that those allegations must be accepted as true for purposes of this Motion. The Court agrees.

Jump specifically alleges that Northern Tier was a fiduciary under ERISA and acting within its fiduciary capacity when it misled him as to the terms of the Northern Tier Plan. (1st Consol. Compl. ¶¶ 71-72.) Jump further alleges that he relied to his detriment on Northern Tier's misstatements by accepting employment with Northern Tier, and relinquishing his right to subsidized health care benefits under the Speedway Plan. (Id. ¶¶ 71-74.) As this Court has observed, it would be "'premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings,' because a determination of fiduciary status based on function is a 'mixed question of law and fact.'" In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 312 F. Supp. 2d 1165, 1181 (D. Minn. 2004) (Doty, J.) (quoting In re Elec. Data Sys., 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004)). Moreover, "'fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives.'" Id. (quoting In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 544 (S.D. Tex. 2003)). Thus, although the facts as developed through discovery may yield a different result, Jump has adequately pled Northern Tier's fiduciary status under ERISA.

Jump also adequately alleges a claim of equitable estoppel under § 1132(a)(3). "The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation." Chorosevic v. MetLife Choices, 600 F.3d 934, 942 (8th Cir. 2010) (citation omitted). "Courts may apply the doctrine of estoppel in ERISA cases only to interpret

ambiguous plan terms[.]" Fink v. Union Cent. Life Ins. Co., 94 F.3d 489, 492 (8th Cir. 1996). "'Common-law estoppel principles cannot be used to obtain benefits that are not payable under the terms of the ERISA plan,' . . . and a plaintiff 'may not use an estoppel theory to modify the unambiguous terms of an ERISA plan.'" Kendall v. Twin Cities Iron Workers Pension Plan, 893 F. Supp. 2d 988, 999 (D. Minn. 2012) (Davis, C.J.) (quoting Neumann v. AT&T Commc'ns, Inc., 376 F.3d 773, 784 (8th Cir. 2004)).

Jump plainly has met this standard for pleading purposes as to Northern Tier. He alleges that Northern Tier misled him beginning in December 2010 by providing him with information stating that he would be eligible for subsidized health benefits under the Northern Tier plan. (1st Consol. Compl. ¶¶ 25-27, 30.) Northern Tier argues that Jump does not allege that he read the presentation materials at issue, but the Complaint clearly alleges otherwise. (Id. ¶ 24.) Jump alleges that he was further misled by Northern Tier's September 2011 presentation, which expressly states that Northern Tier will "recognize Speedway service for eligibility and vesting in benefit plans[.]" (Id. ¶¶ 38, 34-37.) Although the latter presentation did not specifically address the subsidy, Jump alleges that he believed that Northern Tier's failure to address the subsidy meant that the December 2010 statement remained accurate. (Id. ¶ 40.) Jump further alleges that Northern Tier never disclosed that a subsidy would not be available to Jump before he decided to join Northern Tier. (Id. ¶ 41.) Finally, Jump alleges that Northern Tier's misrepresentations and omissions led him to terminate his employment with Speedway and join Northern Tier to his detriment. (Id. ¶¶ 3,

11

45, 61.) He claims that he would have simply retired from Speedway had he known that he was not entitled to a subsidy under the Northern Tier Plan.

Northern Tier claims that the Northern Tier Plan cannot provide Jump with the relief he seeks because Jump was not a "Category A Eligible Retiree" as set forth in Amendment Number 1.  In response, Jump contends that he qualified as a "Category A Eligible Retiree" and is therefore entitled to a subsidy.  At this early stage, the Court simply cannot determine whether Jump is entitled to a subsidy under Amendment Number 1 or whether there is any ambiguity under the Plan as it relates to Jump's benefits.

In sum, read as a whole, Jump's First Consolidated Complaint adequately alleges claims under § 1132(a)(3) against Northern Tier.

   **2.     Speedway**

Speedway argues that Jump's fiduciary duty and equitable estoppel claims against it should be dismissed because Jump does not allege that Speedway provided false or misleading information about the Speedway Plan.  Jump does allege, however, that Speedway and Northern Tier worked together to provide information to Speedway employees about what benefits would be available after the transition.  (See 1st Consol. Compl. ¶¶ 24, 27, 30, 31, 34.)  There is no dispute that Speedway owed a fiduciary duty to Jump at the time the statements at issue were made.  Jump's allegations are sufficient to allow him to pursue the fiduciary duty and equitable estoppel claims against Speedway.  It is simply too early in the litigation to determine what, if any, role Speedway played in

drafting and communicating information to its employees about what would be available under the Northern Tier Plan. Speedway's Motion is denied as to Jump's § 1132(a)(3) claims.

## C.     Wrongful Denial of Benefits (Count III)

Jump also alleges that Northern Tier wrongfully denied him benefits under the Northern Tier Plan. 29 U.S.C. § 1132(a)(1)(B) allows a plaintiff to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Northern Tier argues that this claim should be dismissed because Jump failed to exhaust the administrative remedies provided for in the Northern Tier Plan. (See Ort Decl. Ex. A § 10.04.) Jump admits that he did not pursue administrative remedies under the Northern Tier Plan, but claims that it would have been futile to do so.

"The futility exception is narrow—the plan participant 'must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009) (quoting Zhou v. Guardian Life Ins. Co. of Am., 295 F.3d 677, 680 (7th Cir. 2002)). Because Jump has not proffered any facts to show that Northern Tier necessarily would have denied his claim had he pursued administrative remedies, the futility exception is inapplicable and this claim must be dimissed. The Court will dismiss the claim without prejudice, however, to allow Jump to exhaust his administrative remedies.

**D.      Interference with Protected Rights by Speedway (Count VI)**

Jump contends that Speedway interfered with his protected rights under ERISA by terminating his employment before he agreed to be employed by Northern Tier in an effort to avoid paying him subsidized benefits. (Pl.'s Opp'n Mem. (Docket No. 59) at 25.) It is unlawful under ERISA to "discharge, fine, suspend, expel, discipline, or discriminate against a participant . . . for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. To properly plead a violation of § 1140, Jump must allege that he participated in a statutorily protected activity, he experienced an adverse employment action, and a causal connection existed between the two. Shrable v. Eaton Corp., 695 F.3d 768, 771 (8th Cir. 2012).

In the Complaint, Jump alleges that "[i]n reliance on the misrepresentations made by Defendants, [he] did not retire in November 2011, opting instead to transition with SuperAmerica to its new ownership [Northern Tier]." (1st Consol. Compl. ¶ 45.) Speedway then terminated his employment to facilitate the transition. (Id. ¶ 47.) In other words, Jump does not allege that Speedway unilaterally terminated him for the purpose of avoiding responsibilities under ERISA. Based on these allegations, Jump cannot maintain an interference claim because he has failed to allege that he suffered an averse employment action by Speedway. Section 1140 simply does not apply to the circumstances alleged. This claim is dismissed.

**CONCLUSION**

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED that:**

1. Defendants Northern Tier Energy, LP's and Northern Tier Retail, LLC's Motion to Dismiss (Docket No. 26) is **GRANTED in part and DENIED in part**;

2. Defendant Speedway's Motion to Dismiss (Docket No. 30) is **GRANTED in part and DENIED in part**;

3. Count III is **DISMISSED without prejudice**;

4. Counts VI, VII, VIII, IX, X, and XI are **DISMISSED with prejudice**.

Dated: <u>May 15, 2014</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge
